Good morning, Your Honor. Jeff Blank representing Mr. Summers, the Petitioner-Appellant. Good morning, Mr. Blank. The issues, I think, were somewhat unique in this case in that it came from the top down. The Ninth Circuit said he was to have counsel, and there was three issues that this Court said it had concerns with. First, the ability to amplify or amend his writ, and the cases cited by the Court were Hitchcock and the citing to Price, which is U.S. Supreme Court. I think they're directly on point. You need the record. I know- Let me ask you about that. Sure you do. They need the record. My impression, though, is, and tell me if I've got this wrong, the record was cited by the parties in the briefs. It was reproduced in the briefs, and no one disputed the accuracy of that, of the account of what was in the record. That's correct, Your Honor. We got a hold of the trial transcript and brought it up with the Ninth, to the Ninth Circuit, and primarily- I mean, in front of the district judge. The parties quoted what took place with respect to the juror and the police officer. In the briefs. Right. And everybody agreed that's what was said. So even though the judge didn't have the actual official transcript, he had what the parties said occurred, and both parties agreed that's what occurred. Yes, I think, but there was a slight inaccuracy that I dwelled in with the juror bias issue. What was talked about, I think, at the trial court was it was just bias because the juror's daughter dated the DA, and that it should have been dismissed for cause, and there was nothing that the defense counsel could do about it. When I went through the record, he still had one preemptory left. Okay, but that's all in the record. I mean, the district judge knew that. Maybe he was right, and maybe he was wrong. I don't know if the district judge knew that. I didn't find that to be the assumption in the discussions in federal court, simply that it was bias. In other words, was it bias per se that because her daughter dated the DA, that was sufficient to kick her or to have her removed for cause? So I think that is a discrepancy as far as what was in the lower record. And the other issue, which wasn't in the lower record at all, and I raised in my brief briefly, was there was a detective allowed to testify to discredit a witness. Jailhouse individual, Mr. Hardy, was the detective, and Collins was, I think, or Cranford, I'm getting my name, they're both with Cs. There was a man in prison that said that he heard the confession of the other two men in the room. They allowed a collateral witness to be brought in solely for the purpose to say, I don't think he's credible, and I think that was improper. That was never raised below by defense counsel. That wasn't discussed by the court at all. I understand that may be, you know, is it way because it wasn't raised, but I don't think that's something that should be brought up for the first time on appeal. Because the witness issue that was raised at the district court was the police officer that went out and said there was a confidential informant that said S-Hog, the street name, he did it. And the objection was or should have been it was hearsay, and that was all before the lower court. I'm not familiar with what issue you're referring to. My impression is that you had three points. One was the judge should have gotten the transcript. Two, there was juror bias because one of the jurors said that the daughter had dated a prosecutor. And the third was that there was ineffective assistance because a detective testified to what some prostitute told. Right. I don't – where does this other thing come from? In my brief, I state it as a potential issue of why he should be – if he amplifies, can he amplify that at that time to say – That's not a certified issue on appeal. Only if – and I know I'm – I don't want to expand. If it's looking at – it's ineffective assistance regarding witness testimony, but you're right. It was not raised below that one instance. Not only that, it's not one of the issues that we certified for appeal. Correct. So why don't we stick with the issues that are certified? I understand and I agree, and I'm using a very broad, hopefully, brush that maybe this comes in as witness discreditation. But I understand what you're saying and I agree with you. It specifically was not identified. It's something when I went through the record that the lower court didn't have, I said nobody talked about this. But again, I don't think in the lower court, my understanding is that they didn't – with the juror issue. It was clearly discussed that the relationship was discussed. However, what was not discussed or was not done by counsel, and there's a case in the Ninth Circuit that was overturned on other grounds. It was Court Jasso, I found, the heirs, 116, Fed Appendix 847. And in a similar case saying, although counsel's failure to object to the juror might support an ineffective assistance claim, it wasn't objectively unreasonable and not implied juror bias. So I think we're looking at the same thing, saying what he could have amplified on his claim was not simply that she had bias, but that my counsel at the time didn't use the preemptory to remove her from the jury and she ended up being the jury foreperson. So in that regard, I think the amplification or amendment should be allowed. And I understand the Respondent's position simply says it's an all or nothing. You need to raise it. If you don't raise it, it's gone and it's waived. But I don't think that's what the cases say. And I think it's – Roberts, did he exhaust a claim of ineffective assistance of counsel with respect to the challenge in State court? He did not raise the fact that there was a preemptory left. No, he did not. So even if he amended it, he'd be out of luck because he didn't exhaust it. Well, I think at the lower court, that's something, you know, I would try to argue saying it's part and parcel. In other words, it was ineffective to let – not to make a motion. Well, that's pretty creative of you, but I mean, if he didn't exhaust it, he didn't exhaust it, you know. No, I didn't find any – I couldn't find in the record where anyone – anyone brought up the fact that he had a preemptory. For that matter, when I found it, I was quite surprised because when I read through it, it sounded like he had used them all up and his only – the only reliance would have been making an objection based on bias. So – Could we go to the issue regarding Officer Crawford's testimony about what information he received about S. Hogg, I believe the nickname was. Didn't the district court, the State district court, didn't they strike a certain part of testimony upon objection from counsel at the trial stage? I don't – I think part might have been struck that what was not struck was the statement simply that, yeah, I heard on the street that this person said S. Hogg did it, and there was no objection that it was straight hearsay. Was it that explicit that S. Hogg did it or something more indirect? You're right. I'm not sure he said – she said S. Hogg pulled the trigger type thing, but S. Hogg was – you know, I have information about S. Hogg and the murder. I'd have to look in the record. It was there. It was there. And part of that problem is if the record was before the district court, you could – you know, we could look at it and say, yeah, what was – what was said or what should have been said. And I understand – and, again, I'm not trying to ignore the rules. They said, well, it's not hearsay. It was for state of mind. What did the detective do after he learned that? And I know that's a pretty standard method of getting around the hearsay is I'm not taking it for the truth. But let me go investigate. And wasn't there other evidence that perhaps the other officers already had your client in mind as a suspect? Yes. I think there was other – there were other individuals that were either caught or apprehended or made statements implicating them. And this was kind of added on on top of that is our position. I think I'm down to a minute and 45. I'd like to save that for rebuttal. Let me just see if Judge Gould had anything before we – any questions? I have nothing right – I have nothing right now. Thank you, Mr. Blank. You've got about a minute and 45 when we come back. Morning. Morning. Vic Schulze for the Nevada Attorney General. Three claims were certified for the appeal. The first claim is that the district court should have, quote, unquote, allowed the petitioner to amplify his claim. My response to that in the briefing is that under the habeas corpus rules, and I rely on Rules 2 and 4, my legal judgment is that the habeas corpus rules overruled the cases that were cited in the COA in this case. And the district court simply followed his duty in dismissing what was clearly a bald claim. Trial counsel is ineffective because trial counsel was ineffective. That was the claim. I'm being generous when I say the claim was bald. It wasn't even to the point of being bald. It had no allegations in it. I would also point out factually that Mr. Summers had four different opportunities to state a decent claim under that first issue. He filed not only his first habeas petition toward the end of 2009, he filed a second one, not denominated an amended petition, but he filed another petition in 2010 in the district court. I then pointed out in my motion to dismiss that there were no facts in the claim. He didn't seek at that point to amend. And then when I answered the claim, in my answer, his response was, there's nothing wrong with my claim. And so he actually had four opportunities factually to amend that claim and put in something that I could respond to in the answer, and he failed to do it. His response to my answer, his response to my motion to dismiss was, there's nothing wrong with this claim. But we know he knows how to allege an ineffective claim under Strypton because Issue 3 here with Cranford states an ineffective assistance claim. So we know he knows how to do it. He had the state court briefing in front of him, four opportunities. He did not do so. I think under the habeas corpus rules, especially Rule 4, Judge Hicks properly kicked that out. As to Claims 2 and 3, dealing with whether or not I provided Judge Hicks sufficient record, Judge, you're absolutely correct. The voir dire section on the dating bias claim of Mr. Bateman, the prosecutor, was laid out in their direct appeal opening brief, and I provided that brief to the district court. They actually in their brief cited that. They laid all of those quotes out. For the Cranford claim, same kind of issue. I rely on 28 U.S.C. 2254e, where there's a presumption that district court and appellate court fact-finding is presumed to be correct. If Mr. Summers had challenged any of the facts, then I would have provided those transcripts to Judge Hicks. He never did. He never made that challenge. And therefore, under 2254e, it seems to me that the Nevada Supreme Court's fact-finding in those appeals, the direct appeal and the post-conviction appeal, govern this issue. And I also think that you're correct that everybody agreed as to the dating bias claim, everybody agreed as to what those facts were. I have to admit I'm a little surprised. I'm from a very small town in central Nevada, and I can't believe I've moved to Las Vegas with 2 million people, and I'm still dealing with issues where people in the courtroom know each other. This is kind of a strange claim. But it's notable that the defense attorneys did nothing with the claim. They were there live. They could assess the credibility of the juror. They didn't challenge. They didn't seem to think there was an issue because of the dating relationship. Was the record developed in terms of the role of that prosecutor who used to date the juror's daughter? I mean, was it a key role? I mean, not necessarily. Was that prosecutor the lead attorney? What was their involvement in the trial? I think they were sharing. Best as I can tell from the transcript, I think they were sharing. It was two, as I recall from the transcript, it was two years before. It was a short dating relationship of a couple of months. And the district court judge, she was asked at that point, can you be fair? She said yes. Nobody in the courtroom had a problem with the issue. Was the record developed as to why the relationship ended? No. To my recollection, it was not. As a matter of fact, that was the smart aleck comment by the other attorney. At least I thought it was. He was an attempt at humor when he made the comment, some very brief thing, please don't ask it. I think he was joking. I made it. There's a footnote in my brief. We don't know if it ended well or not. If it ended poorly, and I'm speculating, if it ended poorly, the defense may have wanted that juror. Without a development of the record, all doubt would go to the defense, right? We don't, I don't, this is so brief. This was a page or two with this juror, and nothing was developed anywhere. And because nobody seemed to have any concern. As you noted, it seems like a strange situation given the town settings that you just described. It's just odd in my view that the record wasn't further developed along the lines I just suggested. I think it was not further developed because the defense attorneys did not seem to have any concern based on what this juror had said on the record. They did point out it was a short relationship. But that wouldn't be the sole obligation of the defense attorney to do that. I'm sorry? That wouldn't be the sole obligation of the defense counsel to do that, would it? It would not be, but the district court judge, as I recall from the transcript, asked a couple of questions, asked her if she could be fair. She said yes. Nobody else went into the issue. But again, under 2254e, the fact finding by the State supreme court governs, Summers never challenged the facts. Under 2254e1 and 2, he's got a duty to overcome that fact finding by clear and convincing evidence. He did not do so. Same issue with Claim 3. The reason I did not put the transcript in front of the trial court, the habeas court below, was that Summers never challenged the facts. And if he didn't challenge the facts, then the facts that govern are the facts that were found by the Nevada supreme court. I placed all of that briefing in front of Judge Hicks. I'm sorry, Judge? You know, we get these habeas cases by the hundreds. Right. And this is the first one that I can remember in a long time where, for whatever reason, the State didn't produce the transcript. Is this the normal practice that you follow? You only produce the transcript if somebody quarrels with your brief? I can't say that I have a normal practice one way or the other. I would have produced the brief had Summers made that challenge. As to Claim 2, because the facts were laid out in the direct appeal opening brief in the court, in the State courts, and we provided that briefing, and everybody agreed to the facts and there was never any challenge to those facts, I did not give those issues. I did not give those transcripts to Judge Hicks. As to Claim 3, same kind of issue. I rely on 2254E where there was no challenge to the facts. The Nevada supreme court made findings of fact. And 2254E1 and 2 apply to appellate court findings of fact as well. I would also point out, lastly, that certified issues 1 and 2 themselves are themselves bald claims. If you look at Claim 3, the issue was very specifically, trial counsel is ineffective for not interviewing police officer Crantham to find out that his knowledge was based on hearsay. But counsel knew that from what was going on at trial because he said, this woman came up to me and said she had street knowledge that Summers was involved in this case. And so it's double hearsay, maybe it's triple hearsay. But sitting there listening to that testimony, the question becomes, what would trial counsel have learned under Strickland, under the prejudice prong, I'm sorry, under the deficient performance prong, what would trial counsel have learned that she didn't know sitting there listening to the guy's testimony when he said, this strange unknown woman came up to me and said she had street information? Any trial attorney is going to know that's hearsay. So the question in Claim 3 is begged, what would counsel have learned that counsel didn't know already if counsel had interviewed Officer Cranford? The answer is absolutely nothing. As to Claim 2, Claim 2 is also bald because the claim is the district court improperly claim without having the transcript. But there is no evidence anywhere of juror bias. I understand that every time in my motion and my answer in the two petitions, Summers kept saying bias, bias, bias, she's biased. The problem is there's no evidence of bias. The Nevada Supreme Court pointed out there was no evidence of bias, and Summers never challenged that in federal court. So I would say that the state court, based on 2254E, he is stuck with the facts from the state court for both Claims 2 and 3. Unless the court has any questions, I have no further comments. George Gould, Judge LeMille, anything? No. No questions. Thank you, Mr. Schultz. Thank you. Mr. Blankbeck, you've got about two minutes. All I'd like to emphasize, Your Honor, is shifting the burden on to the defendant and his counsel, and it kind of merges the two.  the defense has a duty to bring this up. Was it his attorney's obligation to bring this up? And if he didn't, that's ineffective assistance. To bring what up? About the juror bias and raising that claim later, and the reliance. I think the Court's correct saying, you know, what's the practice in Nevada as far as providing the record? What is the harm in providing the record? I mean, the man's in for life without parole. I don't see any harm in it, but by the same token, if they say this is what the record said, and you agree that that's what the record said, I'm having a hard time finding what harm was done. Well, except that if the record, I would have made arguments differently. I mean, I wasn't at the trial level or at the district court level. I got appointed for this appeal. So I'm not sure. I can't speculate as to what's going through their minds as to why they didn't. And as the judge stated, you know, why didn't they, you know, bring up the issue of bias, you know, and more, and say when did the relationship end? I had all these questions. What's in the record or not in the record? If it's not in the record, does that give him the right to amplify and say, look, the fact that he didn't pursue bias is potentially grounds for an issue? And I understand what Your Honor is saying as far as limiting, and I do try to push the envelope a little as I see things, but we've got what we've got. And I'm saying if he gave the record, I think there would be a much better chance that let him put up there what is there. If the district court finds it's not proper, it's not proper. But to outright just say by speculation he knew, he should have known, he could have done it, this is a jailhouse lawyer at best, you know, unrepresented. I don't know what he knows or doesn't, but I wouldn't speculate. So this is more of a challenge to Nevada's procedures and rules in handling this type of a claim as opposed to ineffectiveness of counsel. It seems to me as if you've got certain procedures that the Nevada courts follow and they, I mean, we give some presumption of correctness to what they've done. Yes. I think stepping outside a little bit, it's like, yeah, does this apply or is this a proper procedure that this Court wants to see again or not, I think is a peripheral issue to say if you allow it now, will you see it again. Thank you, Your Honors. Thank you. Thank you very much, gentlemen. The case just argued is submitted. Thank you.
judges: Lemelle, Silverman, Gould